193 N.J. Super. 533 (1984)
475 A.2d 82
MARIE DIPIETRO, PLAINTIFF-RESPONDENT,
v.
ANTHONY DIPIETRO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 12, 1984.
Decided April 17, 1984.
*536 Before Judges BISCHOFF, PETRELLA and BRODY.
Tomar, Parks, Seliger, Simonoff & Adourian, attorneys for appellant (Charles N. Riley of counsel and on the brief).
Edwin Segal, attorney for respondent.
The opinion of the court was delivered by BRODY, J.A.D.
The question on this appeal is how to value for purposes of equitable distribution a vested pension with known fixed monthly payments commencing at a future date. In an opinion reported at 183 N.J. Super. 69 the Chancery Division determined in this divorce suit that plaintiff-wife receive 25% of *537 defendant-husband's pension as part of the equitable distribution of the parties' marital assets. At the time of the divorce defendant was 57 years old. The portion of the pension subject to equitable distribution will begin paying him $651.78 a month for life when he becomes 65 years old.
The judge calculated the pension's value by multiplying the monthly payment by 135.6, defendant's life expectancy at age 65 expressed in months. He used a factor for inflation to offset totally the interest discount for immediate distribution. After rounding off the product to $88,400, the judge awarded plaintiff $22,100, a figure he said was her 25% share. Finding defendant's assets inadequate to distribute this sum immediately, the judge ordered that plaintiff be paid out of each monthly pension payment unless defendant chooses to pay her at an earlier date. After he rendered the reported opinion, the judge established a formula for implementing his decision that requires defendant to pay plaintiff 12% annual interest from the valuation date on the unpaid balance.
Defendant contends that this method of calculation is mistaken in that it gives plaintiff at least twice as much as the 25% the judge intended her to have. We agree and reverse.
A vested pension plan which will provide monthly benefits to a spouse is equitably distributable. Kikkert v. Kikkert, 177 N.J. Super. 471 (App.Div. 1981), aff'd o.b. 88 N.J. 4 (1981). Kikkert identifies generally the factors to be considered in establishing the value of such an interest and deciding whether to distribute the recipient spouse's share before pension payments are made to the retired spouse. It encourages immediate distribution, "preferably by voluntary agreement," to avoid extended contacts between the former spouses. When immediate distribution is made, the pension is discounted to the valuation date with the aid of "actuarial computations based upon life expectancy tables." When assets are inadequate to make immediate distribution or are altogether lacking "resort must be had to a form of deferred distribution based on fixed percentages." Id. at 477-478.
*538 The judge's calculation was mistaken in three respects: (1) the inflation factor should have been omitted because the pension payments are known and fixed, (2) the husband's life expectancy should have been measured from the date of divorce and not from his retirement date, and (3) if the husband's assets are inadequate to make immediate distribution, deferred distribution should not bear interest.
The trial judge mistakenly discounted the future value of this fixed pension by employing the method used in a wrongful death action. The object there, however, is to discount to present value the dependents' share of the decedent's projected earnings over what would have been his remaining work-life expectancy. Even if those earnings would not increase in real terms, they would tend to rise because of inflation. Future earnings being discounted to present value must therefore be inflated over earnings at death to take into account this inflationary factor. Tenore v. Nu Car Carriers, Inc., 67 N.J. 466, 482 (1975). By contrast, future fixed pension payments are unaffected by inflation and should not be inflated to offset the interest discount.
The correct method for establishing valuation date value of future fixed pension payments is first to determine the cost of the pension if purchased as an annuity on the retirement date. The term of the annuity is assumed to run from the retirement date to the end of the pensioner's life expectancy measured from the date of divorce. Measuring life expectancy from his age of retirement without accounting for the chance that the pensioner will not attain that age would be unduly speculative. The cost of such an annuity is the value of the pension on the retirement date. This figure must then be discounted to valuation date value by an appropriate rate of interest.
We follow the general rule that the valuation date is the date the complaint for divorce was filed. Smith v. Smith, 72 N.J. 350, 361-362 (1977); Borodinsky v. Borodinsky, 162 N.J. *539 Super. 437, 447 (App.Div. 1978). Nevertheless, it is unrealistic to measure a spouse's statistical life expectancy from the valuation date when he has to survive to the date of divorce for there to be equitable distribution.
If the spouse entitled to the pension lacks resources to distribute immediately, distribution must be deferred until the pension is due. The pensioned spouse will then pay the distributive percentage out of each pension payment. These distributive payments should be neither augmented nor discounted by interest because each is due and payable as each pension payment is made.
Of course, the parties remain free to agree at any time to some other method of calculation and payment.
Defendant did not appeal from the judgment. Almost nine months after judgment was entered he moved on the ground of "mistake" to correct the erroneous pension payment formula in the judgment. The trial judge ruled that his formula was correct and denied the motion. This appeal is from that final order. Plaintiff contends the appeal is out of time.
R. 4:50-1(a) permits relief from a judgment or order if there has been a mistake. A motion for such relief must be made within one year after entry of the judgment. R. 4:50-2. The rule may not be used to convert a "trial error" from which an appeal must be taken within 45 days into a "mistake" which may be corrected within one year. Hodgson v. Applegate, 31 N.J. 29, 36-37 (1959).
The error here was not a "trial error" but rather an "error apparent on the face of the record," a mistake in expressing his judgment mathematically that a trial judge may correct on application made within one year. See Hodgson, supra, 31 N.J. at 38-40. The judge intended plaintiff to have 25% of defendant's pension. Through his mathematical mistake, however, she will receive at least twice what the judge intended. This is a "manifest error not open to controversy" and therefore a proper subject for relief under R. 4:50-1(a). Id.
*540 A motion made under R. 4:50-1 "is addressed to the sound discretion of the court, guided by equitable principles." Id. at 37. Here the trial court did not exercise that discretion because he erroneously ruled that there was no mistake. We assume original jurisdiction, R. 2:10-5, to conclude that equitable considerations require correction of this judgment. The erroneous payment formula is executory, plaintiff has not relied on it to her detriment, and if it is not corrected she will receive a substantial windfall at defendant's expense.
Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.